IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEANNA GODWIN **Plaintiff**, | ) ) ) ) |
| vs. | ) Civil Action No. 22-1066 ) |
| THE GEORGE WASHINGTON, LP, | ) Magistrate Judge Dodge ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Jeanna Godwin ("Godwin") alleges that she was discriminated against on the basis of a disability or perceived disability when an offer of employment was withdrawn by Defendant The George Washington, LP after it learned that she was on a methadone maintenance treatment program.

Presently pending before the Court is Defendant's partial motion to dismiss the request for punitive damages in the Second Amended Complaint (ECF No. 13). For the reasons that follow, the motion will be denied.[1]

### I. Relevant Procedural Background

Godwin commenced this action on July 26, 2022 and filed an Amended Complaint on October 3, 2022 (ECF No. 11). Count I alleged disability discrimination in violation of the Americans With Disabilities Act, 42 U.S.C. §§ 12101-12117 (ADA), and Count II asserted the same allegations under the Pennsylvania Human Relations Act, 43 P.S. §§ 951-63 (PHRA). Federal question jurisdiction was asserted over the ADA claim, 28 U.S.C. § 1331, and supplemental jurisdiction is asserted over the state law claim, 28 U.S.C. § 1367(a).

---

[1] The parties have fully consented to jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF No. 19.)

On October 17, 2022, Defendant filed a partial motion to dismiss (ECF No. 13), seeking both to dismiss the request for punitive damages in Count I and the PHRA claim on the ground that it is premature. The motion has been fully briefed (ECF Nos. 14, 20). Defendant filed an answer to the other allegations in the Amended Complaint (ECF No. 15).

At the Initial Case Management Conference on November 15, 2022, the parties reached a compromise in which Godwin agreed to file a Second Amended Complaint ("SAC") on or after November 29, 2022, at which time the PHRA claim would be timely, and Defendant's motion would be considered only if the SAC still contained a request for punitive damages.

On December 2, 2022, Godwin filed the SAC, which still includes a request for punitive damages.[2] Therefore, the Court will address Defendant's motion to dismiss as to that issue only.

### A. Facts Alleged in the Second Amended Complaint

Godwin alleges that she has been prescribed a methadone maintenance program for several years with no issue nor relapses. On or about August 3, 2021, Defendant contacted her with regard to an application for employment she had submitted. At that time, Defendant extended an offer of employment as a banquet bartender for its Washington, Pennsylvania location. (SAC ¶¶ 9-11.) Godwin had been referred to apply for this position by a longtime employee of the Defendant and has over twenty years of serving and bartending experience. (*Id.* ¶¶ 17-19.)

Approximately one week later, Godwin met with Defendant's hiring manager, Caitlin, to complete pre-employment paperwork. During the course of this discussion, Caitlin mentioned that Godwin would be subjected to onsite drug testing. At that point, Godwin disclosed to Caitlin

---

[2] Although the SAC mentions the PHRA in its opening paragraphs, it does not include a claim under this statute.

that she was prescribed a methadone maintenance treatment plan and would be able to provide her physician's certification to that effect. Caitlin indicated that this should not be an issue and advised Godwin to be sure to bring the certification. A few hours later, however, Caitlin called Godwin and told her that Defendant was rescinding its offer of employment since Godwin would not be able to "pass [Defendant's] drug test with flying colors." (*Id.* ¶¶ 12-16.)

Godwin asked if they were rescinding the offer even though she was only taking medication that was prescribed for her. Caitlin responded that Defendant's owners had said that Godwin "had to pass or else."

Based on these allegations, Godwin alleges that Defendant failed to hire her because of a disability or perceived disability. She claims that as a direct and proximate result of Defendant's conduct, she has sustained economic loss, future lost earning capacity, lost opportunity, loss of future wages, emotional distress, humiliation, pain and suffering and other damages. (*Id.* ¶¶ 20, 22.) In addition to compensatory damage and other relief, Godwin also seeks punitive damages. (SAC at 5.)

**II.     Standard of Review**

"Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "This requires a plaintiff to plead "sufficient factual matter to show that the claim is facially plausible," thus enabling "the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). While the complaint "does not need detailed factual allegations ... a

formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

As noted by the Third Circuit in *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), a 12(b)(6) inquiry includes identifying the elements of a claim, disregarding any allegations that are no more than conclusions and then reviewing the well-pleaded allegations of the complaint to evaluate whether the elements of the claim are sufficiently alleged.

**B. Analysis**

The ADA prohibits discrimination on the basis of disability in connection with employment. 42 U.S.C. § 12112(a). The term "disability" is defined as:

>  (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
> 
>  (B) a record of such an impairment; or
> 
>  (C) being regarded as having such an impairment.

42 U.S.C. § 12102(1).

Refusing to hire someone on the basis of a disability or a perceived disability violates the ADA. Although individuals who are currently using illegal drugs are not covered by the Act, 42 U.S.C. § 12210(a), this exclusion does not apply to those who are recovering from drug addiction by, for example, taking methadone as legally prescribed by their physicians. § 12210(b). *See also* 42 U.S.C. § 12111(6)(A) (the term "illegal use of drugs" "does not include the use of a drug taken under supervision by a licensed health care professional.")

Thus, an employer who has a blanket policy of requiring all applicants to take a drug test (which they "had to pass or else") and then rejecting those who tested positive for methadone, without further inquiry, would violate the ADA. *See MX Grp., Inc. v. City of Covington*, 293

F.3d 326, 339 (6th Cir. 2002) ("we cannot agree with Defendants, that in the context of a drug addiction impairment, merely because methadone has the intended effect of ameliorating the addiction, recovering drug addicts lose all protection under the ADA. The statute itself belies any such contention."); *Equal Emp. Opportunity Comm'n v. Hussey Copper Ltd.*, 696 F. Supp. 2d 505 (W.D. Pa. 2010) (employer's failure to engage in an individualized asssesment of the effect of applicant's use of methadone on his suitability for a labor job because he posed "a high probability of substantial harm to himself" created genuine issue of material fact precluding summary judgment in employer's favor); *Equal Emp. Opportunity Comm'n v. Steel Painters LLC*, 433 F. Supp. 3d 989, 1007 (E.D. Tex. 2020) (EEOC stated a prima facie case of discrimination against employer, in part, based on statement by administrative manager that "we don't normally hire people on methadone.")

A plaintiff may recover punitive damages if she "demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). The Supreme Court has held that "the terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 535 (1999). Further, these terms require that "an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law." *Id.* at 535-36.

Defendant argues that Godwin does not allege any facts to support any knowledge by the hotel that it "may be acting in violation of federal law." In turn, Godwin asserts that upon learning of her past addiction and methadone maintenance program, Defendant rescinded an offer of employment, which demonstrated purposeful, intentional conduct.

Many courts have held that it is premature to make this determination on a motion to dismiss. *See, e.g., DeSantis v. New Jersey Transit*, 103 F. Supp. 3d 583, 597 (D.N.J. 2015) (court would not "speculate as to what damages, if any, DeSantis might ultimately be entitled to."); *United States v. Dorchester Owners Ass'n*, 2020 WL 5866053, at *5 (E.D. Pa. Sept. 30, 2020) ("The Court will reserve any decision on the adequacy of that evidence [supporting punitive damages] until the trial takes place."); *Mangan v. Commonwealth Med. Coll.*, 2012 WL 2018270, at *3 (M.D. Pa. June 5, 2012) ("The question of whether Plaintiff's punitive damages claim is sustainable requires development of the record through discovery. Dismissal of this claim, at present, would be premature.")

Godwin has alleged that she notified Defendant that the only drug she was taking was prescribed by her physician and offered to provide certification, and Defendant responded by withdrawing its offer of employment. Depending on the facts as developed, this could support a claim for punitive damages if Defendant's actions were made with knowledge that it was violating the law. Thus, Godwin's allegations are marginally sufficient at this stage of the proceedings.

Therefore, Defendant's motion to dismiss the request for punitive damages will be denied without prejudice to move for summary judgment, as appropriate, regarding Godwin's claim for punitive damages after the development of a full record. *See Medina v. Shree Sai Siddhi Wyomissing, LLC*, 2018 WL 3344706, at *2 (E.D. Pa. July 6, 2018) ("In the event that Plaintiff is unable to demonstrate that Defendant acted with malice or reckless indifference towards her federally protected rights, we note that Defendant will have the opportunity to file a motion for summary judgment following the close of discovery.")

C. **<u>Conclusion</u>**

For these reasons, Defendant's partial motion to dismiss (ECF No. 13) will be denied.

An appropriate order follows.


December 30, 2022                                  <u>/s/Patricia L. Dodge</u>
                                                   PATRICIA L. DODGE
                                                   United States Magistrate Judge