# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

_____

| | : | |
|---|---|---|
| JEANNA GODWIN | : | JURY DEMANDED |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | No.   22-1066-PLD |
| THE GEORGE WASHINGTON HOTEL | : | |
| | : | |
| | : | |
| Defendants | :_ | _____ |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Jeanna Godwin, by and through her undersigned counsel, hereby files this Memorandum in Support of her Opposition to the Motion for Summary Judgment of Defendant, The George Washington Hotel, and in support thereof states as follows:

### I.     Introduction.

In summer of 2021, Plaintiff, Jeanna Godwin attempted to obtain a job working as a banquet bartender with the Defendant, The George Washington Hotel ("Defendant") at their Washington Pennsylvania location.  Ms. Godwin learned about the job from a friend who worked with Defendant, submitted an application and was summoned to an interview.  During the interview, Ms. Godwin advised Defendant that she was on a methadone maintenance program

as part of treatment for an opioid addiction.  Upon learning of this methadone maintenance program, Ms. Godwin was told by the hiring manager that unless she could pass a drug test "with flying colors" that Defendant would not hire her.  As a result of the Defendant's refusal to hire Ms. Godwin asserted claims of discrimination under the Americans with Disabilities Act and the Pennsylvania Human Relations Act.

Defendant filed its Motion for Summary Judgment seeking summary judgment on three issues.  First, Defendant claims that Plaintiff's compensatory damages should be capped under the Americans with Disabilities Act.  Second, Defendant claims that Plaintiff lacks evidence to establish a punitive damages award; and third, Defendant claims that Plaintiff lacks evidence, other than a subjective belief that she was not hired as a result of her disclosing that she was participating in a methadone maintenance program.

Defendant's Motion should be denied as to all three issues.  While Defendant's analysis of the compensatory damages cap is correct as to the Americans with Disabilities Act, the Defendant's Motion fails under the Pennsylvania Human Relations Act, as the PHRA has no compensatory damages cap.  Second, Plaintiff has alleged facts sufficient to establish a claim of punitive damages as the facts proffered by Plaintiff, if believed by a jury, would establish a purposeful and intentional decision to discriminate against

Plaintiff in her status as a recovering addict. Finally, the Plaintiff's testimony about Ms. Hutchinson's statements to her during the application, interview and hiring process and the undisputed temporal proximity of the Plaintiff's disclosure of her status and the refusal to hire her creates a prima facie claim for disability discrimination under the ADA and the PHRA and as such, summary judgment should be precluded.

## II.     Plaintiff's Statement of Facts.

Plaintiff incorporates by reference the facts set forth in her Opposition to the Defendant's Statement of Facts.

## III.    Argument.

### A. Legal Standard.

> Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

> Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In examining the motion, we must draw all reasonable inferences in the nonmovant's

> favor. InterVest, Inc. v. Bloomberg, L.P., 340 F.3d 144, 159–60 (3d Cir. 2003).
>
> Disagreements over what inferences may be drawn from the facts, even undisputed ones, preclude summary judgment. Ideal Dairy Farms, Inc. v. John Labatt, Ltd., 90 F.3d 737, 744 (3d Cir. 1996) (citation omitted). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from those facts" are matters left to the jury. Anderson, 477 U.S. at 255, 106 S.Ct. 2505.
>
> The initial burden of demonstrating that there are no genuine issues of material fact falls on the moving party. Celotex, 477 U.S. at 323, 106 S.Ct. 2548. Once the moving party has met its burden, the nonmoving party must counter with "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted). The non-moving party must show more than the "mere existence of a scintilla of evidence" in support of its position. Anderson, 477 U.S. at 252, 106 S.Ct. 2505. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct. 1348 (citation omitted).

Campo v. Mid-Atlantic Packaging Specialties, LLC, 564 F.Supp.3d 362, 379 (E.D. Pa. 2021).

As set forth in the Plaintiff's Opposition to the Defendant's Statement of Material Facts, there are several disagreements with the material facts that preclude the entry of summary judgment. Most critically, Plaintiff, Jeanna Godwin alleges specific statements made by the Defendant's hiring manager, Caitlyn Hutchinson, clearly suggesting that Defendant would not hire Plaintiff

because of her participation in a methadone maintenance program. Ms. Hutchinson specifically advised that Plaintiff that since she would not be able to pass a drug test "with flying colors," Defendant would not extend an offer of employment. This intentional and willful refusal to hire Plaintiff based on her membership in a protected class, a recovering opioid addict, constitutes disability discrimination under the ADA and PHRA, and justifies punitive damages, if a jury elects to find Defendant liable and finds Defendant's conduct to be willful and malicious. Defendant is not entitled to summary judgment in this matter and Defendant's Motion for Summary Judgment should be denied.

### B. Plaintiff's Disability Discrimination Claims under the ADA and PHRA Should Not Be Dismissed.

In this case, record evidence demonstrates genuine issues of material fact that preclude the entry of summary judgment on the issue of whether Defendant refused to hire Plaintiff because of her participation in a methadone maintenance program as treatment for her opioid addiction, a protected disability under the ADA and PHRA.

> The ADA prohibits discrimination on the basis of disability in connection with employment. 42 U.S.C. § 12112(a). The term "disability" is defined as: (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(1). Refusing to hire someone on the basis of a disability or a

> perceived disability violates the ADA. Although individuals who are currently using illegal drugs are not covered by the Act, 42 U.S.C. § 12210(a), this exclusion does not apply to those who are recovering from drug addiction by, for example, taking methadone as legally prescribed by their physicians. § 12210(b). See also 42 U.S.C. § 12111(6)(A) (the term "illegal use of drugs" "does not include the use of a drug taken under supervision by a licensed health care professional.") Thus, an employer who has a blanket policy of requiring all applicants to take a drug test (which they "had to pass or else") and then rejecting those who tested positive for methadone, without further inquiry, would violate the ADA. See MX Grp., Inc. v. City of Covington, 293 F.3d 326, 339 (6th Cir. 2002) ("we cannot agree with Defendants, that in the context of a drug addiction impairment, merely because methadone has the intended effect of ameliorating the addiction, recovering drug addicts lose all protection under the ADA. The statute itself belies any such contention."); Equal Emp. Opportunity Comm'n v. Hussey Copper Ltd., 696 F. Supp. 2d 505 (W.D. Pa. 2010) (employer's failure to engage in an individualized assessment of the effect of applicant's use of methadone on his suitability for a labor job because he posed "a high probability of substantial harm to himself" created genuine issue of material fact precluding summary judgment in employer's favor); Equal Emp. Opportunity Comm'n v. Steel Painters LLC, 433 F. Supp. 3d 989, 1007 (E.D. Tex. 2020) (EEOC stated a prima facie case of discrimination against employer, in part, based on statement by administrative manager that "we don't normally hire people on methadone.")

Godwin v. George Washington, LP, No. CV 22-1066, 2022 WL 18027827, at *3-4 (W.D. Pa. Dec. 30, 2022).

Contrary to the facts offered by the Defendant, Ms. Godwin was notified that she would not be hired immediately after she disclosed her participation in a

methadone maintenance program, and despite her being offered the position [See Exhibit C] and already signing paperwork for employment.

Here, the evidence shows that Defendant notified Ms. Godwin that she was not being offered a bartending position on the grounds that she would not be able to pass a drug test, given her participation in a methadone maintenance program. Contrary to Defendant's assertions, Plaintiff never refused to take a drug test. In fact, Ms. Godwin agreed to take a drug test and produce documents from her treating physicians and methadone maintenance program to counter any positive test, however, Defendant's decision was already made that Ms. Godwin would not be hired, given the phone call Ms. Hutchinson made to Plaintiff after she had already completed her i9 paperwork and reviewed the workplace policies she was shown by Ms. Hutchinson. There are ample facts beyond Ms. Godwin's subjective belief to demonstrate that the reason Defendant would not hire her was her disclosure that she was in a methadone maintenance program.

Ms. Godwin described her interactions with Defendant concerning the hiring process is clear detail. Ms. Godwin initially completed a paper application with Caitlyn Hutchinson after making an appointment to meet with Ms. Hutchinson; her conversation with Ms. Hutchinson lasted about twenty-five (25) minutes. [See Exh. A at p. 55, lines 12-22.] Ms. Godwin then heard nothing from Ms. Hutchinson until after she advised Ms. Kline that she had not heard from

Defendant with regards to her application. [See Exh. A at p. 56, lines 1-23.] Ms. Godwin then received some texts from Ms. Hutchinson about the status of her application. [See Exhibit C.] On August 3, 2022, Ms. Hutchinson wrote, "Good morning, My name is Caitlyn from the george washington hotel! I interviewed you a couple of weeks ago, I was on a hiring freeze but I would love to bring you in for paperwork and give you a starting date if you would still like to work with us. I tried calling but your voice mail is full." [See Exh. C.] At that point, Ms. Godwin believed that she was being hired by Defendant. [See Exh. A at p. 58, lines 4-17.] Ms. Godwin made an appointment with Ms. Hutchinson, after some back and forth and Ms. Hutchinson told her that she had the job. [See Exh. A at p. 58, lines 18-21.] Ms. Godwin had not met with Mr. Plutto at this point, casting doubt on Defendant's description of the hiring process.

Further, Ms. Godwin had another meeting with Defendant several weeks after initially completing an application. Ms. Godwin testified about that second meeting as follows:

> Q.··· What paperwork did you complete?
>
> A.··· W-2s, drug testing policy, everything.· Background, everything.
>
> Q.··· Did you believe that you were going to have to submit a -- submit to a drug test?
>
> A.··· On my way out the door, that's when she said, we do on-site drug testing.

> Q.· · Well, I think just a moment ago you said that you completed drug testing policy paperwork?
>
> A.· · We went through the paperwork, the very last paper was the drug testing policy.  When we got to that paperwork she said, okay.  This is a drug testing policy.  We stood up.  She said, we do our own on-site drug testing is that okay? I stopped before I went out the door and I said, I have no problem with that.  I've been described methadone for the past ten years.  I have no problem getting paperwork from the doctor stating that I'm prescribed that.  Is that going to be an issue?  And she said, no, that should be no issue.  I said okay.  Sounds good, I'll see you Saturday.  She also told me that I would be training with Deb on Saturday night at 7:30. The only thing that she did not tell me was what to wear.
>
> Q.· · Okay.  When she –
>
> A.· · She said -- I wasn't finished. I'm sorry.  She then said, just go ahead and bring the paperwork with you, I will let Rob and the owners know that you're bringing this paperwork, and we should be all good.  See you Saturday.
>
> Q.· · Were you offered to complete the drug test while you were there?
>
> A.· · No, I was told it was an on-site drug test, and that I would be getting drug tested on Saturday.

[See Exh. A at p. 59, line 3 through p. 60, line 13.]

Finally, Ms. Hutchinson called Plaintiff prior to providing her the opportunity to take the drug test or otherwise provide paperwork demonstrating her participation in her addiction treatment program.

Q.· · Did you speak with anybody at George Washington after that conversation?

A.· · Caitlin called me.

Q.· · When did Caitlin call you?

A.· · A couple hours later.

Q.· · Okay.· What did Caitlin say?

A.· · I had it on speakerphone, I was setting the table for dinner and I honestly thought she was telling me what to wear, because that's the only thing we did not cover. And instead she called and she said, Hey, Jeanna. I said, Hey, Caitlin, what's up? She said, I hate to make these -- I hate to make these types of phone calls.  I said what do you mean? She said, unfortunately, we cannot hire you because you cannot pass a drug test with flying colors. And I said, well, what does that mean? I said, I have paperwork from my doctor that states I've been taking methadone for ten years. And she said, yeah, I'm sorry, unfortunately I went to Rob and the owners, and they both said that if you cannot pass a drug test with flying colors, that we cannot hire -- that we cannot have you work here.  And I said, oh, okay. Thank you.  And she said, I'm really sorry.  And I said, even if there is paperwork, and she said, yes, unfortunately they said, if you can't pass it with flying colors.  And I said, okay. Well, thank you, and have a good day.  And I had a shocked look on my face.  My boyfriend and my daughter was there, and they heard that.  So now you may be able to see why it took me a day to start looking into other employment.

Q.· · Did she say anything else on the phone call?

A.· · No.

[See Exh. A at p. 80, line 3 through p. 81, line 24.] Plaintiff clearly testified that she never refused to take a drug test which creates a material issue of fact as to the Defendant's purported reason for the termination of the Plaintiff's employment.

Defendant's Motion for Summary Judgment should be denied as to Plaintiff's ADA and PHRA claims.

### C. Plaintiff's Punitive Damages Claims Under the ADA and PHRA Should Not be Dismissed.

Defendant argues that it should be entitled to summary judgment on the Plaintiff's punitive damages claim stating that Plaintiff fails to demonstrate malicious, evil, willful or wanton conduct. However, the facts in the record establish that Defendant could be found liable by a jury that the Defendant at least appreciated that it was at risk of violating the Plaintiff's federally protected rights.

> Punitive damages are available under the ADA when "the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). The focus is on the employer's state of mind and requires that "an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law." Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 535–36, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999); see also Gagliardo, 311 F.3d at 573.

Gucker v. U.S. Steel Corporation, 212 F.Supp.3d 549, 562 (W.D.Pa. 2016).

In addition to the facts set forth above concerning the termination of the Plaintiff's application for employment, there is also evidence that Defendant's own

timeline and story as to whether the Plaintiff refused to take a drug test is not credible. The testimony of Ms. Hutchinson and Mr. Plutto differs on several key points. One, whether the Plaintiff refused to take a drug test. Ms. Hutchinson claims that she explained that to Mr. Plutto; Plutto claims that he never heard anything about Ms. Godwin refusing a drug test. Plaintiff testified that she never refused a drug test and that she was informed over the phone by Ms. Hutchinson that unless she would be able to pass a drug test with flying colors, she would not be employed by Defendant. Further, the issue of who made the decision to stop the hiring process is unclear given the testimony of Ms. Godwin, Ms. Hutchinson and Mr. Plutto. All of this evidence suggests that Defendant is struggling to "get its story straight," and that suggests that Defendant apprehends the risk that terminating the hiring process violated the Plaintiff's civil rights under the Americans with Disabilities Act.

Defendant's Motion for Summary Judgment should be denied as to Plaintiff's punitive damages claim.

**D.     Plaintiff's Compensatory Damages Claims Should Not Be Capped Under the Pennsylvania Human Relations Act.**

Defendant's Motion for Summary Judgment as to the ADA's compensatory damages cap should be denied. While Defendant's argument concerning the ADA cap on damages is persuasive, it ignores the Plaintiff's assertion of an identical

discrimination claim under the Pennsylvania Human Relations Act.  The Pennsylvania Human Relations Act has no damages cap based on the number of employees of a Defendant, and Courts are justified to mold a compensatory damages verdict to apportion an amount in excess of the ADA cap to damages arising from a PHRA claim.  See, Gagliardo v. Connaught Laboratories, Inc., 311 F.3d 565, 570, 571 (3rd. Cir. 2002).

As set forth in the Gagliardo decision, "[h]ere, the PHRA, with its similar language and applicability, clearly provides a cause of action nearly identical to that of the ADA. The fact that the PHRA does not contain a damages cap further indicates that it was intended to provide a remedy beyond its federal counterpart, the ADA. As the courts in Passantino and Martini recognized, subjecting such state law claims to the federal cap would effectively limit a state's ability to provide for greater recovery than allowed under the corresponding federal law. Passantino, 212 F.3d at 510; Martini, 178 F.3d at 1349–50.  Imposing such a limitation would violate the federal law's prohibition on limiting state remedies. Id." Gagliardo, at 570-571.

> The Court of Appeals has clearly recognized that the state's ability to provide for a greater recovery under state law should be permitted. Thus, allocation between the ADA and the PHRA was explicitly allowed in Gagliardo. See also McKenna v. City of Phila., 2010 WL 2891591, at * 12 (E.D.Pa. July 20, 2010) (stating that "[a]ll of the decisions approving of...an apportionment...involve cases

in which both capped and uncapped claims have been tried to a favorable verdict."); E.E.O.C. v. Federal Express Corp., 537 F.Supp.2d 700 (M.D.Pa.2005).

Gucker v. U.S. Steel Corporation, 212 F.Supp.3d 549, 562 (W.D. 2016).

Plaintiff has asserted both an ADA claim and a PHRA claim and Defendant's Motion for Summary Judgment on the damages cap issue must be denied.

## IV.    Conclusion.

In light of the foregoing, Plaintiff respectfully requests this Honorable Court deny Defendant's Motion for Summary Judgment.

**LAW OFFICES OF ERIC A. SHORE, P.C.**

BY:   s/Graham F. Baird
**GRAHAM F. BAIRD, ESQUIRE**
Two Penn Center
1500 JFK Boulevard, Suite 1240
Philadelphia, PA 19102

Date: May 24, 2023            Attorney for Plaintiff, Jeanna Godwin

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| JEANNA GODWIN | : | JURY DEMANDED |
| Plaintiff, | : | |
| v. | : | No.   22-1066-PLD |
| THE GEORGE WASHINGTON HOTEL | : | |
| Defendants | :_____ |

## CERTIFICATE OF SERVICE

On <u>May 24, 2023</u>, the undersigned served the Plaintiff's Brief in Opposition to the Defendant's Motion for Summary Judgment, via ECF upon the following counsel:

Anthony T. Gestrich
Whiteford Taylor Preston
11 Stanwix Street
Suite 1400
Pittsburgh, PA 15222

**LAW OFFICES OF ERIC A. SHORE, P.C.**

BY:__/s/Graham F. Baird_____
**GRAHAM F. BAIRD, ESQUIRE**
Attorney for Plaintiff, Jeanna Godwin